SOLON HUMPHREYS et al., as Trustees, etc., Respondents, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY et al., Appellants.

The opinions or intentions of parties who execute a written instrument, free from ambiguity, cannot be given in evidence, to alter the signification of its plain language; nor can surrounding facts be proved for such purpose. If the language be plain and there be no ambiguity it must be interpreted according to its terms.

The plaintiffs, acting as trustees and under the direction of the board of managers of an association formed for the purpose of buying, selling and leasing railroad cars and locomotives, leased to the railroad corpora-

tion defendant certain rolling stock. The agreement under which said association was formed provided that "all questions arising among the shareholders in relation to the business of the association shall be decided finally and settled by the board of managers in accordance with such decision." It also provided that "in all contingencies that may arise, not hereinbefore provided for, in relation to the trust property, the said trustees shall have such authority as may be given them from time to time by the board of managers." The interests of the stockholders in the association were represented by certificates issued to them. By the lease the lessee agreed to pay as rent a specified percentage per annum upon the whole amount of the principal represented by the certificates of shares issued and outstanding, and also a percentage of the principal. The railroad company having defaulted in the payment of rent, another agreement was entered *into* between plaintiffs, acting under the authority of the board of managers of said association and being described therein as trustees, and the railroad company. By this instrument, after reciting the execution of the former lease and stating that it was for the interest of the holders of the certificates issued that the terms of said lease should be modified, and in consideration of the premises, it was agreed on the part of plaintiffs, "on behalf of such of the holders of said certificates issued by them or their predecessors in the said trust as have already authorized or shall hereafter authorize the same, and have caused or shall cause such authorization to be indorsed upon the respective certificates held by them," that said rent should be reduced to an amount specified. In an action brought by plaintiffs, as trustees of said association, to determine the rights of the parties interested under said lease and modified lease and the liability of the railroad company, it appeared that the railroad company had paid the rent called for by the second agreement to the assenting certificate holders and offered to pay the same percentage to those not assenting. *Held,* that, as by the terms of the second agreement, even conceding the trustees had power to contract for and bind all the stockholders, they had not attempted or assumed so to do, but only to bind the assenting stockholders, said agreement only modified the first as to the assenting certificate holders, and as to those who did not assent the terms of the original lease remain operative, and the trustees might still represent them and recover on the original lease the amount due them under it; that there was no such joint contract as would prevent plaintiffs from insisting upon performance by the railroad company of the original agreement in behalf of those who had not assented to its modification.

(Argued May 5, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made January 31, 1889, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs, as trustees under an agreement known as the Car Trust of New York No. 2, to procure a judicial construction thereof as to the duties of the plaintiffs thereunder and to ascertain the rights of the parties interested under a lease and a modification thereof, executed by said trustees to the New York, Lake Erie and Western Railroad Company. Said company and certain members of the association who protested against the prosecution of this action are made parties defendant.

The judgment entered at Special Term determined the rights of the parties and decreed a recovery in favor of the plaintiffs against the railroad company for a large amount for rent due plaintiffs as trustees, upon a lease of certain personal property to the company.

The action was tried without a jury, before a single judge at Special Term, who found the following, among other facts:

The railroad company is a corporation, and on the 19th of February, 1880, John Lowber Welsh and other individuals, together with the railroad company defendant herein, entered into an agreement and thereby formed an association to be known as Car Trust of New York No. 2, for the purpose of buying, selling and leasing railroad cars and locomotives. By the agreement the capital stock of the association was to consist of $5,000,000, divided into 5,000 shares of $1,000 each, and the stock to be classified by alphabetical series, beginning with the letter C. Anyone signing the agreement and subscribing for one or more shares, was to be a member of the association. The material contracts of the association were to be in writing and made by a board of managers, and were to contain a stipulation for non-personal liability of the shareholders. The capital stock was to be paid in installments as called for by the board of managers, to trustees of the association, and each owner was entitled at all meetings of the association to one vote for each share of stock held by him, and the

owners had the power to remove the managers and elect others. If default were made in the payment of installments upon the capital stock as called for, the stock could be forfeited. Neither the death or insolvency of any shareholder, nor the sale, transfer or surrender of any shares, nor the admission of new members under the agreement was to work a dissolution of the association, and one ceasing to be a shareholder ceased thereby to be a member of the association. In the ninth clause of the agreement it was stated that "All questions arising among the shareholders in relation to the business of the association, shall be decided finally and settled by the board of managers in accordance with such decision."

Provision was also made in the agreement for the purchase of the cars and locomotives which were to be subsequently leased, and all such as were leased at one time were to be identified by marking on them the letter of the series which was represented by such letter, and an inventory was to be made describing the cars and locomotives, and it was also to designate the proportion of the capital stock by its series letter which had been applied to the payment for such cars and locomotives. No cars or locomotives were to be received by the trustees of the association until they were in funds sufficient to pay for them. Upon the payment upon all the installments of the capital stock, the trustees were to give proper receipts. The stock was to be transferred only on the books of the trust. Upon payment in full of all installments upon the shares subscribed for by any subscriber, he was to be entitled to a proportionate part of the capital and profits of the association, and the trustees were to issue to him a certificate for the number of shares subscribed for by him, which certificate was to be in the ordinary form and transferable only on the books of the trust.

The trustees were to have power, under the direction of the board of managers, to contract with the railroad company defendant for the lease to that company of all the cars and locomotives (a separate lease to be made of each series) which might be delivered to the trustees under the agreement, upon

certain terms, set out in full in the agreement. The lease was to provide, among other things, for the payment of a certain interest by the lessees upon the capital expended in that series for the purchase of the locomotives and cars which were to be leased to the railroad company, and for certain semi-annual payments upon the principal of such capital, so that after a time it would all be paid back, and the cars and locomotives were then to become the property of the railroad company. Other provisions were inserted providing for the details of the carrying out of the lease and for the proceedings in case of default. The agreement was to take effect by its terms as soon as 500 shares of the capital stock had been subscribed. Edwin D. Morgan and Edwin D. Morgan, Jr., were made trustees, and they accepted, in writing, the position.

It was also provided in the agreement that "In all contingencies that may arise, not hereinbefore provided for, in relation to the trust property, the said trustees shall have such authority as may be given them from time to time by the board of managers."

Pursuant to the purpose for which this Car Trust Association above described was formed, the trustees, on the 12th day of January, 1882, entered into an agreement with the railroad company defendant, in this form, viz.: "This agreement made and entered into the twelfth day of January, 1882, between Edwin D. Morgan and Edwin D. Morgan, Jr., of the city of New York, trustees as hereinafter mentioned, and hereinafter called the lessors, parties of the first part, and the New York, Lake Erie and Western Railroad Company, hereinafter called the lessees, parties of the second part."

By this lease the trustees or lessors leased to the company as lessees certain cars and locomotives, identified as Car Trust of New York No. 2, Series F., upon certain terms and conditions therein mentioned, the material parts of which are as follows: The cars and locomotives were leased for a term of ten years from November 1, 1881, unless sooner terminated as therein provided, "at and for the rent, or sums of money for the rent or hire of the said cars or locomotives, to be paid

to the lessor half-yearly during the said term, which rent or sum of money shall be equal to six per cent (6 per cent) per annum upon the whole amount of the principal represented by the certificates of shares issued, which may be outstanding at the time of such payment, and also the sum of sixty-three thousand and eight hundred dollars." This sum of $63,800 was a payment to be made half-yearly, and was to be applied to a reduction of that portion of the capital stock of the association invested in this series F.

Since the execution of the lease Edwin D. Morgan has died, and the plaintiff Solon Humphreys has been duly substituted as trustee in his place. The certificates of capital stock issued as representing the cost of this series F. amounted to $1,275,000 originally, but before the 1st of November, 1884, the amount had been reduced, by payments as provided for in the lease, to the sum of $1,019,000. On the 1st of November, 1884, a semi-annual payment was due, amounting to $94,370, of which $30,570 were for six months' interest at the rate of six per cent per annum upon $1,019,000, and $63,800 for the fixed semi-annual payment called for by the lease. The railroad company defaulted in this payment.

On the 17th of March, 1885, another agreement was entered into between the plaintiffs, acting under the authority of the board of managers of the association, and the railroad company defendant, and such second agreement was in the following form: " This agreement, made the 17th day of March, in the year 1885, by and between Solon Humphreys and Edwin D. Morgan, as trustees (hereinafter called the lessors), parties of the first part, and the New York, Lake Erie and Western Railroad Company, a corporation of the state of New York (hereinafter called the lessee), party of the second part, witnesseth."

The instrument then recites the execution of the former lease, and states that it is for the interest of the holders of the certificates issued for such series, that the terms of such former lease should be modified, and, therefore, in consideration of the premises, it was agreed as follows: " The parties of the

first part, on behalf of the holders of said certificates issued by them or their predecessors in said trust, as have already authorized, or shall hereafter authorize, the same, and have caused, or shall cause, such authorization to be indorsed upon the respective certificates held by them : 'The terms of the lease of January 12, 1882, have been modified by an agreement of March 17, 1885, and the holder of this certificate has assented to and is entitled to the benefit of the same,' agree to modify the terms and conditions of said lease so that the said lessee shall pay a rental of five per cent per annum upon the whole amount of the principal of said certificates outstanding instead of six per cent per annum as provided in said lease, but in lieu of the sum of $63,800 provided in said lease to be paid semi-annually, the said lessee shall pay to the lessor on the first day of July, 1886, a sum equal to one per cent only upon the whole amount represented by the original certificate issued under series F."

The agreement then provides for the payment of increased percentages upon the amount of outstanding certificates, to be paid thereafter semi-annually until all the certificates issued under series F. shall have been finally redeemed and paid off. In consideration of this modification the railroad company agreed to give security for its performance.

Prior to the commencement of this action holders of $891,000 of the then $1,019,000 of certificates, series F., which were outstanding, had assented to, and authorized or ratified the terms of the modifying agreement of March, 1885, and holders of only $128,000 of such certificates had not authorized or ratified the execution of such agreement. Prior to the trial of this action the holders of $28,000 more of such certificates assented to, authorized and ratified such agreement, leaving only the holders of $100,000 of certificates out of a total of $1,019,000 not assenting to or ratifying such agreement of modification.

Since the execution of the latter agreement the railroad company defendant, has paid the plaintiffs the rent becoming due thereunder, so far as the assenting certificate holders were concerned, and the company has offered to pay an amount

sufficient to pay the non-assenting holders of certificates at the rate called for by the modified agreement, provided they would assent to its terms, and since the commencement of this action the company has offered to make such payments unconditionally. The assenting holders of certificates protest against any payment to non-assenting holders at any greater or other rate than prescribed in the modified agreement. They also protested against the commencement of any suit by the plaintiffs for the purpose of compelling the payment of any greater sum to such non-assenting holders than is provided in such modification.

The plaintiffs, as trustees, in order that all sides might be heard upon the application, made a number of the assenting certificate holders, enough to form a representation of that interest, parties to the action, as also the railroad company lessee.

The Special Term decided that the second agreement only modified the first so far as the assenting certificate holders were concerned, and that as to those holders who had not assented to such modification, the terms of the original lease still remained operative, and judgment against the railroad company was rendered accordingly.

*Charles Steele* for appellants. The trustees had full power under the direction of the managers to bind the association by the agreement of March 17, 1885, without the assent of the certificate holders. (2 W. & T. [L. C.] 1761; 2 Perry on Trusts [3d ed.], § 511; *Bingham's Appeal*, 64 Penn. St. 349; *White* v. *Hicks*, 33 N. Y. 383–404; *Bolton* v. *Jacks*, 6 Robt. 166–233; Broom's Leg. Max. [8th ed.] 539; *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 24; Story on Agency [8th ed.], § 168; *Kampf* v. *Jones*, 2 Keen, 756; *Harvey* v. *Stracey*, 1 Drew, 73–138; *Church* v. *Churchill*, L. R. [5 Eq. Div.] 44.) The agreement of March 17, 1885, has been ratified and confirmed by over nine-tenths of the certificate holders, and is, therefore, binding upon the association; the trustees have no power to maintain this action against the protest of such holders. (Lindley on Part. [4th ed.] 899; *Peacock*

v. *Cummings*, 46 Penn. St. 434; *Waterly* v. *Ex. Co.*, 50 Barb. 157; Morawetz on Corp. § 641; *Kirk* v. *Hodgson*, 3 Johns. Ch. 400; *Cross* v. *Jackson*, 5 Hill, 478–480; *Wilkins* v. *Pearce*, 5 Den. 541; *Townsend* v. *Goewey*, 19 Wend. 424; *Moore* v. *Brink*, 4 Hun, 402; *Ricker* v. *A. L. & T. Co.*, 140 Mass. 346; *F. N. Bank* v. *Shedd*, 121 U. S. 74, 86; *Shaw* v. *R. R. Co.*, 100 id. 605, 612.) Whatever may be the rights of non-assenting shareholders, these plaintiffs cannot enforce them in this action. (*Slocum* v. *Barry*, 38 N. Y. 46.) The court erred in excluding evidence offered by the defendants, to explain the agreement of March 17, 1885, by showing the circumstances under which it was executed. (1 Greenl. on Ev. [14th ed.] §§ 277, 279; *Coleman* v. *M. B. I. Co.*, 94 N. Y. 229; *A. Bank* v. *Strever*, 18 id. 502; *Moore* v. *Meacham*, 10 id. 207; *French* v. *Carhart*, 1 id. 96; *Pollen* v. *LeRoy*, 30 id. 549–559; *Messmore* v. *N. Y. S. Co.*, 49 id. 423–427; *Nash* v. *Towne*, 5 Wall. 689–699; *McMaster* v. *Ins. Co.*, 55 N. Y. 222, 234; *Brown* v. *Thurber*, 77 id. 613; *Overseers* v. *Overseers, etc.*, 10 Johns. 229.)

*R. C. McMurtrie* for appellants other than the railroad company. Whatever liability exists the plaintiff cannot enforce it. (*Johnson* v. *Reck*, 3 Stark. 66; *Gordon* v. *Ellis*, 7 M. & G. 607; *Bushell* v. *Bevan*, 1 Bing. 103, 120.)

*George DeForest Lord* for respondents.

*C. E. Beaman* and *Samuel Dickson* for non-assenting certificate holders. For the purpose of this case the agreement of February 19, 1880, is to be regarded as virtually a chattel mortgage. (*Harvey* v. *R. I. L. Works*, 93 U. S. 664; *Ricker* v. *A. L. & T. Co.*, 140 Mass. 346; Green's Brice's Ultra Vires, 61; 3 Kent's Comm. 45; Story on Part. §§ 122, 125; 30 N. Y. 344; 1 E. D. Smith, 341; 3 Johns. Ch. 400.)

PECKHAM, J. The appellants claim that the trial court improperly excluded the evidence of the witnesses taken by deposition. A great deal of such evidence consisted of proof

offered to show the opinion or the intention of the board of managers or the trustees in obtaining or executing the modified agreement. There was some evidence offered to show that the railroad company defendant was insolvent and unable to carry out the provisions of the original lease when the modified agreement was executed. That agreement recites that it is for the interest of the certificate holders that it should be executed. The opinions or intentions of parties who execute a written paper free from ambiguity, cannot be given in evidence to alter the signification of the plain language of the paper. Nor can surrounding facts be proved for such purpose. If the language be plain and there be no ambiguity, it must be interpreted in accordance with its terms. It may be assumed that the railroad company defendant was insolvent at the time of the execution of this modified agreement, and that it was unable to continue the payment of the rent provided for in the original lease, yet that fact has no effect in altering the interpretation which would otherwise be given to the language of the modified agreement. That language is plain and unambiguous. We think no error was committed by the court in excluding the depositions.

The main question in the case is in regard to the effect to be given to the second agreement already referred to. The original agreement or lease was, as all admit, a perfectly valid instrument, binding upon all parties to it. The failure of the railroad company to perform its conditions left the lessors at liberty to enforce them by a resort to legal measures, if so disposed. The question is, to what extent and in whose behalf has this valid agreement been modified, if at all?

On reading the agreement which is set up as modifying the original lease, it is seen that the plaintiffs assumed as trustees to execute it " on behalf of such of the holders of said certificates issued by them or their predecessors in the said trust, as have already authorized or shall hereafter authorize the same, and have caused or shall cause such authorization to be indorsed upon the respective certificates held by them." This language seems quite plain and to be free from any doubt as

to its meaning.   In behalf of those holders of certificates who have authorized or may authorize it, the trustees assume to change the burdens of the first lease and to qualify and lessen the same as against the railroad company.   As to those holders who do not so assent, the burden is to remain as it was at first provided, because the only change provided for is in behalf of those who assent to it.   It is difficult by the use of any form of expression to render this meaning clearer than the paper itself does, and if there be no rule of law which forbids it, it seems equally a matter of course to give such meaning its full scope in practice.   But the defendants say that even assuming there may be some sort of liability on their part, the plaintiffs cannot enforce it, because, as to the plaintiffs, there is no cause of action in their favor after the execution by them of the modification of the lease.   That, however, depends upon the. extent and effect of such modification.   I see no obstacle which should prevent their suing upon the original lease in favor of such persons as to whom it has not been modified, if any there be.   We may assume the question could be raised upon the trial, and that it was not waived by failure to demur. But by the very terms of the second or modifying agreement, the trustees only assume to act or promise in behalf of those who assent to it, and it would seem to follow that, as to those who did not assent, there was no modification, and the trustees might still represent them and bring an action on the original lease to enforce the rights of such non-assenting parties.   The trustees would be assuming no inconsistent position in so doing and would not be in the least disregarding the modification which they had themselves executed, but only in behalf of those who assented to it.

We are quite clear that if there be any holders of certificates who are entitled to regard the first contract between the plaintiffs and the railroad company as unmodified by any subsequent instrument, the plaintiffs may represent them as trustees in such an action as this.

The defendants claim that the trustees had the power when representing a majority in value of the certificate holders, to

bind the minority of such holders in regard to all things as to which the trustees had power to contract at all, and that such was the effect of their signing this modification. For the purpose of rendering such claim intelligible, the foregoing full statement of facts regarding the organization of the association and the powers of the trustees and the board of managers has been given, although in the view I have taken of this case the powers actually granted to the trustees of the association are of no material importance.

It is said that this action of the plaintiffs in executing the second agreement was not the conduct of agents acting for principals named in the contract, but was that of trustees for all the holders of these certificates. They call attention to the form of the second agreement, in which the plaintiffs contract "as trustees" with the railroad company defendant.

It is true they are named in the beginning of the contract as trustees, but when they come to state for whom they intend to agree in that character, the matter is not left in the least doubt, and they say that they act as trustees on behalf of assenting certificate holders only. There is no such joint contract that the plaintiffs cannot insist upon the railroad company's performance of the original agreement in behalf of those who have never assented to its modification either personally or by any representative even assuming to act in their behalf. Reading the two agreements together there is no absurdity of result. As to the non-assenting certificate holders, their interest is to be calculated at six per cent upon the total amount of certificates outstanding in their hands, and as to the others, the interest is to be five per cent on the amount of certificates held by them. This is so plain that it is not necessary to alter a word in either agreement in order to accomplish this result. By the modification in the second lease, which reduces the rate of interest from six to five per cent, it is quite obvious, and indeed it is so stated, that the reduction is confined to the holders of certificates who assent to it, and, therefore, as to those who do not, the higher rate of six per cent is still to be calculated upon the amount of

the certificates which they hold of the total amount outstanding. This is the necessary result of the language used in the two agreements, regard being particularly had to that portion of the second which confines its operation to those holders of the certificates that assent to its terms. Thus the mere form of the second agreement, which sets forth that the plaintiffs act as trustees, is not conclusive, and when the full text of the agreement is considered, it is wholly unimportant.

It cannot be contended that while strictly confining the exercise of their powers within the limits plainly stated in the agreement, the trustees have, nevertheless, unwittingly done the very thing which in substance they therein state they will not do. The effect of the whole thing is quite plain. There is no difficulty in providing for the proper recovery, and the courts below have made a correct form of judgment embodying the principle stated.

In our view, whether the car trust is a partnership, or a joint stock association, or a *quasi* corporation, is not of the least importance. What powers the trustees might have exercised under these agreements, is irrelevant, as we have but to determine what powers they did exercise. And in reading this second or modified lease it becomes apparent they were not assuming to exercise any powers other than as the representatives of the assenting certificate holders, and hence no question can arise as to the execution of a delegated power and an improper or illegal condition added to it by the donees of the power while engaged in its execution.

I have carefully read through all the provisions of the second or modified agreement, and I do not find therein anything inconsistent with the fact that it was entered into by the plaintiffs in behalf only of the assenting certificate holders. Every detail provided for in the agreement must be read with the condition attached that it is only to apply to those holders who assent to the modification. The lowering of the rate of interest and the payment of the percentages are both applicable only to those who assent, and the calculation as to the amount due must be made upon that basis.

The question whether the plaintiffs could maintain an action as trustees upon the modified agreement, in case the railroad company should fail to perform any of the terms or conditions imposed upon it therein, is not now before us, and hence need not be decided.   The company has performed those conditions so far as concerns the assenting holders, and is ready to do so as to the others, and this action is not brought to enforce its provisions against the railroad company.   The action is to recover the amount of rent and principal due the non-assenting holders by virtue of the first agreement or lease, and the fact that as to others the first lease has been modified, can have no material bearing upon this issue.   That there would seem possibly to be an injustice in the result, which permits these non-assenting holders to recover the rent and principal at the rate provided for in the first lease because of the action of the assenting shareholders in permitting its modification as to them, is something for which the courts are in no manner responsible and for which they can provide no remedy.   This is the agreement, is all that can be said.   It was no doubt supposed that all would consent, or if the railroad company and the assenting holders thought that the action of the trustees bound the minority of non-assenting holders, it is but another instance of the many which have preceded it, where parties have erred as to the legal effect of a written instrument, in the execution of which in a particular manner they became interested.   The legal effect of such instrument cannot be altered to the prejudice of others by proof that some of the parties to it erred in their opinion regarding it.

We think the judgment of the court below was right and it should be affirmed, with costs.

All concur.

Judgment affirmed.